HOLDEN v. SMITH.*

. (Division B.   May 12, 1924.)

[100 So. 27.   No. 24130.]

INFANTS.  *Child not convicted of violation of law involving moral turpitude cannot be committed to industrial school; on petition for commitment of child to industrial school evidence must show existence of conditions specified in statute; order committing child to industrial school without evidence to support it reversed on appeal.*

Under chapter 195, Laws 1922, amending section 6 of chapter 111, Laws of 1916, creating the Industrial Training School for delinquent and criminally inclined children, and providing for admission therein, it is provided *inter alia* that children "may be admitted to said institution, in the future, on the following conditions, and no other:

"(a)  Where such child has violated any municipal ordinance or state law, when the violation thereof involved moral turpitude.

"(b)  When a circuit judge or a chancellor shall certify in writing that such child is either immoral, delinquent, or incorrigible in

the opinion of such circuit judge or chancellor, and shall file said written certificate with the superintendent of said institution as a prerequisite of admission." A child who has never been convicted of the violation of any law involving moral turpitude, and who is shown by the undisputed evidence to be an obedient child to constituted authority, cannot be committed to said institution. The judge or chancellor must hear evidence, and the evidence must show the existence of the conditions contained in the statute; and, where a judge makes an order of committal without evidence to support it, his judgment will be reversed.

*Headnote 1.   Infants, 31 C. J., sections 227, 240.

APPEAL from circuit court of Pearl River county.
HON. J. Q. LANGSTON, Judge.

Petition by L. S. Smith for commitment of Susan Smith, a minor, to the Industrial Training School. From a judgment denying her petition to vacate the order of commitment, Mrs. M. J. Holden appeals. Reversed and dismissed.

*Tally & Mayson,* for appellant.

It is the general law of the state, that a minor's rights cannot be disposed of without legal service had upon the minor, and that neither the guardian nor parent, has any power under the Constitution and laws to waive that service, in order to bring them legally before the court. It cannot be done for the purpose of settling final accounts of guardianship; it cannot be done for the disposing of their property, then why should it be done for disposing of that higher element, the very life and character of the child itself?

The decree of the chancery court divorcing this father and mother did not attempt to place the custody of the child, absolutely, with either parent. Therefore, they were left with equal powers and rights, which must be protected, as required by the Constitution and law. Therefore we seriously insist, that the act of the court made in the April term, was void, as to Mrs. Holden, and

the minor child, for the want of legal notice. The legislature of 1922 decided that it was best to place some restriction as to the character of the children, and ages that could be admitted to the said institution. Therefore it does this, by providing for admission of a child to the industrial & Training School on the following conditions and *no other*: (a) "Where such child has violated any municipal ordinance or state law, when the violation thereof involves moral turpitude."

It is therefore necessary here to prove that said child had not only violated some municipal ordinance or state law, but that that violation involved moral turpitude.

There is not one word of testimony in the whole record that tends to prove that this child comes within the purview of the statute.

*J. E. Stockstill,* for appellee.

The record of course shows that Monroe Smith as the father of this child took notice of the proceedings and appeared with his counsel and cross-examined such witnesses, as were offered by the petitioner. However he filed no pleas, made no answer; nor any other committal in the case except to cross-examine the witnesses in order to show the true facts in the case.

A close reading of this record will show that Mrs. M. J. Holden after her desertion from Monroe Smith, was living at John Amacker's place in adultery with Richard Holden, when she married in 1920 and that the very conditions under which the child was placed at this time would be sufficient ground under the law as it then stood to commit the child to the institution.

Under chapter 111 of the Acts of 1916, the petition of a third party as in this case to have awarded to them the custody of a child, that has been committed to the Mississippi Industrial Training School, or any other selected institution, or suitable person, or resting in charge of a custodial agent, would necessarily under this law, be

compelled to make the person or Institution that has custody fixed by the judgment of the court, parties to the petition, and bring them in by summons or otherwise, and would also be compelled to make the original petitioner for the committal a party and also the parent, if one, or the guardian provided the latter was not the petitioner himself.

The allegations of this petition would have to set up at length that the child had reformed; that the conditions had changed; and that there was no longer any chances of delinquency and destitution and the petty violations of the law, and that there is no parent or guardian at the time being held for the support and maintainance of such child under the judgment fixed by the court (as may be done under section 15) and that it would be to the best interest of the child to change its custody and that the petitioner must assert and show definitely the custody in which he desires the child to be placed, describing a satisfactory condition (to be proven to the court), etc.; and when all parties interested are before the court then the judge could hear the entire facts and be in position to change the custody of it, if it was to the best interest of the child. Nothing of this sort was done or pleaded in Mrs. Holden's petition.

ETHRIDGE, J., delivered the opinion of the court.

On April 23, 1923, L. S. Smith, the grandfather of Susan Smith, a minor twelve years of age, filed a petition with the circuit judge of the district in which Pearl River county is situated, alleging that Monroe Smith is the father of Susie Smith, now twelve years of age, and that he had been for five or six years a widower, charged with the support of this little girl and her younger sister, ten years of age; that, when Monroe Smith was left a widower, he placed the child Susie in care of his sister, Mrs. Mitchell, and that he had furnished her with necessaries as far as he was able to do so, but that said child

is now left abandoned and destitute, for the reason that the said Mrs. Mitchell is seriously, and perhaps fatally ill, and is confined to a hospital at Gulfport, Miss., and the said little girl is left without a home, unguarded, and is likely to develop into criminal practices or be subjected to inhuman treatment or conduct; that the father, Monroe Smith, was physically disabled while in service with the overseas forces during the World War, and has been under treatment of the government physicians for about two years, and on this account he is physically unable to provide the necessary support for his two children, especially the said Susie, as he has no other relative who will give her a suitable home; that she is therefore abandoned, destitute, and subjected to immoral circumstances, and petitioner prayed for an order commanding Monroe Smith to appear before the court and answer the petition as to why the child should not be committed to the said institution; that he also bring before the court the said minor; and that, after a full hearing, the court will commit the said child to the said Mississippi Industrial Training School.

Mrs. M. J. Holden, the mother of the child and former wife of Monroe Smith, was at the time of the filing of the petition living with her husband, M. J. Holden, in the town of Picayune in Pearl River county. She was not made a party to the petition nor given any notice thereof; neither does the record show that Susie Smith, minor, was served with any process. The court at the April, 1923, term of the circuit court of Pearl River county signed an order reciting that the "defendants having waived the issuance of process of service on them, and having agreed in writing that the said petition be heard this day by the court, and the parties being present in open court, and the court, having heard and considered the said petition and the evidence in support thereof, doth find that the minor defendant, Susie Smith, is delinquent and incorrigible, and should be committed to the Mississippi Industrial and Training School, and the

court finds that all necessary parties have been made defendants to the petition," and ordered said minor committed to said institution.

Thereafter Mrs. M. J. Holden, the mother of the said child, went to the home of the sister-in-law, Mrs. Mitchell, who formerly had the child in her possession, and secured possession of the child, and took it to her home in Picayune; and, subsequently learning of the order of the court committing said child to the Industrial Training School, filed a petition with the circuit court, praying that said order be set aside and revoked or modified to the extent that said child should not be committed to the said school, and a vacation order made and she be not committed until the application of the mother could be heard. The judge thereupon signed an order reciting that all parties were not ready for the reinvestigation of said cause and the trial of same; that said girl was being properly cared for; and that the hearing of the matter was postponed until some day during the November term of the circuit court, the particular date of the hearing to be fixed by the court after it was assembled on the first Monday in November; that all parties interested in said matter acknowledged notice of said hearing, and agreed to be present and present their respective contentions.

At the November term of the court the court heard the evidence on behalf of all the parties, and refused to vacate the original order made in April by him, and ordered the child committed to the said institution.

It appeared upon the hearing on the part of Mrs. M. J. Holden that she married her present husband in the year 1920; that for more than two years prior to the hearing they had been living in the town of Picayune, and that the said child attended the public schools at that place, and had never been convicted of violating any municipal or state law; and that said child was a good, obedient child, and was being properly cared for by Mr. and Mrs. Holden. The superintendent of the said school

testified that she had never violated any of the school regulations, and was an average child; that he saw no evidence of maltreatment or evil character. The town marshal testified that the child had never violated any law, had never been convicted of violating any law, or charged with violating the law, and that Mr. and Mrs. Holden were apparently kind and considerate of the child, and enjoyed the reputation for peace and order and industry, and that he had never seen any evidence of maltreatment of the child. The Holdens' family physician testified to like effect.

It was shown that Mr. Holden lived in his own home, and was earning upwards of one hundred twenty-five dollars per month, and had only his wife, the child in question, and a child of his own to care for.

He testified that he desired the child to live with them, and had treated and would treat it as though it were his own child. The petitioner's testimony, or the testimony of the Smiths who filed the original petition, failed to disclose any act of moral turpitude, or any of delinquency on the part of the child, or that it had ever violated any law of the state or municipality.

Monroe Smith, father of the child and former husband of the appellant, testified that, after his return from the army, he found his wife and Holden living in adulterous relations on a certain plantation in the county, and that his wife proposed that, if he would give her a divorce, she would let him take the child, Susan, which he did, and placed it with his sister, as above stated. It is further shown that in August, 1919, the appellant obtained a divorce from Monroe Smith, and married M. J. Holden, in January, 1920; that since this marriage there is no charge or act proven showing any immoral act or delinquency on the part of the appellant. On the contrary, the proof shows that she is living a proper life with her present husband.

Treating the case as being pending before the court properly at the November term, and conceding for the

purpose of this opinion that the court had the right to hear the original petition, and that all parties were before him so as to give him full and complete jurisdiction, we still think the proof fails to make out a case warranting the order of commitment. The original act (Laws of 1916, chapter 111), creating the Industrial Training School, and providing for admission of children therein, provides in section 4969 of Hemingway's Code (section 6, chapter 111, Laws of 1916), that—

"Any child less than eighteen years of age, residing or being at the time in the state of Mississippi.

"(a) Who violates any municipal ordinances or state laws, when the violation involves for the purposes of this act, shall be known as a delinquent child.

"(b) Who is destitute or homeless, or abandoned or is in such an evil and immoral environment that such child is likely to develop into criminal practices unless removed therefrom and properly directed and trained, or whose environment seems to point to a criminal career, shall for the purposes of this act be known as a destitute or abandoned child."

Section 6, chapter 111, Laws of 1916 (section 4969, Hemingway's Code), was amended April 4, 1922, Laws of 1922, chapter 195, so as to provide as follows:

"What Children to be Admitted to the School.—Section 6. Any child less than eighteen years of age, and not less than seven years of age residing or being at the time in the state of Mississippi may be admitted to said institution, in the future, on the following conditions, and no other:

"(a) Where such child has violated any municipal ordinance or state law, when the violation thereof involved moral turpitude.

"(b) When a circuit judge or a chancellor shall certify in writing that such child is either immoral, delinquent, or incorrigible in the opinion of such circuit judge or chancellor, and shall file said written certificate with the superintendent of said institution as a prerequisite of admission."

Section 8 of the act (chapter 111, Laws of 1916 [section 4971, Hemingway's Code]), provides for the filing of a petition, and—"upon the filing of such petition, if it shall appear that either parent or guardian of said child resides in this state, the clerk shall issue a summons to such parent or guardian directing him to appear and produce such child at the hearing of said petition, at the time and place appointed, and show cause, if any, why such child should not be adjudged to be a delinquent or neglected child within the meaning of this act, and such summons shall be served not less than five days before the date set for the hearing, unless service be waived."

Section 24 of chapter 111, Laws of 1916 (section 4987, Hemingway's Code), provides for an appeal—"from the order of any court, judge or chancellor committing any child to the State Industrial and Training School or committing any child to the custody of any person."

Of course, for the judge to find and certify in writing that such child is immoral, delinquent, or incorrigible requires evidence, and he cannot on hearing commit the child as incorrigible, delinquent, or immoral, when there is no evidence to support such finding in the record. It is clear that the child is innocent of any wrongdoing, and the law does not warrant a commitment to the institution under the facts disclosed in this record.

The judgment will be reversed, and the petition for commitment of the said child will be dismissed, and the child left with its mother until further order in a proper proceeding in the proper court for the custody of the said child.

*Reversed and dismissed.*